**United States District Court**
**Southern District of Texas**
**FILED**

**OCT 2 6 2017**

**Clerk of Court**

United States District Court
Southern District of Texas
**ENTERED**
October 27, 2017
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

YOLANDA RAMIREZ §
    Plaintiff §
     §
     §
vs. §     CIVIL ACTION NO. M-15-352
     §
     §
NANCY A. BERRYHILL, §
ACTING COMMISSIONER OF THE SOCIAL §
SECURITY ADMINISTRATION §
    Defendant §

## REPORT & RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) on August 23, 2015, for judicial review of the Commissioner's final decision denying disability benefits. (Dkt. Entry No. 1.) The case was referred to the undersigned for report and recommendation. Pending before the Court are Plaintiff's brief and Defendant's Response Brief.[1] (Dkt. Entry Nos. 16–17.) This case is ripe for disposition on the record.

---

[1] Plaintiff filed a motion for default judgment in July 2016, based on Defendant's failure to answer. The undersigned issued two show cause orders for Defendant to explain why it had not complied with the scheduling order. This issue was addressed at a hearing in April 2017 and at a subsequent hearing on May 2017, where it was determined that Plaintiff failed to properly summon Defendant, and, as Defendant correctly pointed out in a written response to the second show cause order, it is disfavored and inappropriate under case law to resolve this type of action through default judgment. The parties agreed to proceed with the matter and a new scheduling order was issued. Accordingly, the motion for default judgment was denied by the undersigned, pursuant to the parties' agreement to proceed with the case in the usual fashion, upon proper service by Plaintiff. The parties have now filed their briefing on the substantive issues underlying the Commissioner's final decision to deny benefits.

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's request for relief be **DENIED**, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

## I. BACKGROUND

Plaintiff filed an application for disability on May 5, 2010. (Dkt. Entry No. 16 at 2.)[2] Her claim for benefits was denied initially and upon reconsideration. (Dkt. Entry No. 17 at 2.) An ALJ subsequently denied benefits. (*Id.*) The Appeals Council remanded the case on two occasions, which resulted in two additional hearings and assignment of the case to a new ALJ on the second remand. (*Id.* at 2–3.) In 2015, the new ALJ denied Plaintiff's claim for benefits, and the Appeals Council denied Plaintiff's request for review. (*Id.*) Plaintiff timely commenced this instant action seeking judicial review of the Commissioner's final decision. (*Id.* at 3.)

Plaintiff alleged an onset disability date of March 1, 2006, based on an array of conditions, such as affective/mood disorders (depression and anxiety-related disorders), herniated discs/disorders of the back (discogenic and degenerative), debilitating pain, thyroid problems, heart disease, and Multiple Sclerosis. (*See* Tr. 14–15.)[3] The ALJ found that Plaintiff was 52 years old on the date of the last insured (June 30, 2011) and stated that the age of 52 is defined as "as an individual closely approaching advanced age." (Tr. 22; 23.) The ALJ found that Plaintiff had a limited education and is able to communicate in English. (Tr. 22.) Her relevant past employment was as a casino cleaner. (Tr. 22.)

---

[2] Page numbers refer to the electronically-assigned (PDF) page numbers via CM-ECF, upon opening the entire file.

[3] Page citations to the administrative record correspond to the bates-stamped page numbers.

## II. STANDARD OF REVIEW

So long as the courts provide each party the opportunity to present his contentions in support of his claim and enter judgment only on the basis of the pleadings and transcript of the record, federal courts may conduct judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) of the Act and dispose of the case on the record. *See Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981). However, this Court's review of the Commissioner's final decision to deny benefits under the Act, per 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence;  and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Under the second permissible inquiry, substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is more than a scintilla, but less than a preponderance. *Id.* If the findings of the Commissioner are supported by substantial evidence in the record as a whole, the findings are conclusive and must be affirmed. *Brown*, 192 F.3d at 496. Under this standard of review, this Court must carefully scrutinize the record to determine if such evidence is present. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam). However, evidentiary conflicts are for the Commissioner, not the courts, to resolve, and courts "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our own judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Brown*, 192 F.3d at 496 (alteration in original) (quoting *Johnson*, 864 F.2d at 343). This Court's

3

judicial review is deferential to the Commissioner's decision, but without being so obsequious that it renders the review meaningless. *Id.*

### III. ESTABLISHING DISABILITY

A plaintiff is not entitled to benefits under Titles II and XVI unless he is "disabled" as defined by the Act. 42 U.S.C. § 423 (d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459–61 (1983). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A plaintiff is not entitled to benefits under Titles II and XVI unless he is "disabled" as defined by the Act. 42 U.S.C. § 423 (d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459–61 (1983). The law and regulations governing benefits under both Titles are the same. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A sequential five-step approach is used to determine whether the claimant qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving the first four steps to show that: (1) he is not presently engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment is either listed or equivalent to an impairment listed in the appendix to the regulations; and, (4) if the impairment is not equivalent to one listed in the regulations, the impairment still prevents him from performing past relevant work. *Leggett*, 67 F.3d at 564 n.2. Once the claimant

proves the first four steps, the burden shifts to the Commissioner to establish that the claimant can perform substantial gainful employment available in the national economy. *Greenspan*, 38 F.3d at 236–37. The burden then shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). A determination at any step that the claimant is or is not disabled within the meaning of the Act ends the inquiry. *Leggett*, 67 F.3d at 564.

In this case, the ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset, March 1, 2006, through her date last insured of June 30, 2011 (Tr. 14); (2) Plaintiff has the following severe impairments: degenerative disc disease, spondylosis, ischemic heart disease, hypertension, thyroiditis, irritable bowel syndrome, depression, and anxiety, and the ALJ found that the alleged Multiple Sclerosis was not a severe condition because the medical record did not support the diagnosis and Plaintiff was never treated for it (Tr. 14–15); (3) however, through the date last insured, the medically determinable severe impairments do not meet or medically equal any impairments listed in the appendix to the regulations (Tr. 16); (4) through the date last insured, she had the residual functional capacity ("RFC") to perform light work, with exceptions; she could lift and carry, and push and pull, up to 25 pounds occasionally and 10 pounds frequently; she could sit up, as well as walk and stand up, 6 hours of an 8-hour day; she could occasionally reach overhead and all other directions with both upper extremities, but she could never climb ladders and scaffolds; she could occasionally climb ramps or stairs, kneel, crouch, and crawl and could only frequently balance; and, she could perform simple tasks and make simple work-related decisions and only occasionally interact with the public (Tr. 17–18); through the date last insured, she was unable to perform her past relevant work (Tr. 22); and, (5) through the date last insured, considering her RFC, age, education, and work experience, and relying on the testimony of

5

a vocational expert ("VE"), the ALJ found that other jobs existed in significant numbers in the national economy that Plaintiff could perform, including the following representative occupations: a scaling machine operator, bakery worker on a conveyer line, and theater usher, although this last position was reduced to 50% to account for her limitation for only occasional interaction with the public (Tr. 22–23). The ALJ then concluded that Plaintiff was "not disabled" within the meaning of the Act at any time between March 1, 2006, the alleged onset date, through June 30, 2011, the date last insured. (Tr. 23.)

## IV. GENERAL SUMMARY OF THE PLEADINGS

The undersigned does not summarize the entirety of the administrative proceedings and record. Rather, the undersigned addresses only the issues and evidence raised by Plaintiff and countered by Defendant. Plaintiff raises two issues.

For her first issue, Plaintiff asserts that the ALJ's decision contradicts itself on whether Plaintiff sought treatment for her mental-related conditions during the insured period, and, as such, the ALJ's findings of fact are facially inconsistent with one another and constitute an abuse of discretion. (Dkt. Entry No. 16 at 2; 4.) For her second issue, Plaintiff argues that the ALJ's findings are inconsistent in the work that Plaintiff can do. (*Id.* at 4.) More specifically, Plaintiff argues that, once one applies the ALJ's findings of fact about Plaintiff's mental and physical condition, it is apparent that Plaintiff cannot perform the three possible jobs cited as proof that she is not disabled. (*Id.* at 4; 6.)

Defendant argues that Plaintiff's first argument is ambiguous, misconstrues the ALJ's written decision by taking the ALJ's findings and reasoning out of context, and improperly attacks the final decision on judicial review by asserting that the ALJ abused his discretion. (Dkt. Entry No. 17 at

6

6–10.)  Defendant argues that there is substantial evidence supporting the RFC determination and that the ALJ applied the proper legal standards in evaluating and weighing the evidence.  (*Id.* at 10.) As to the second issue raised by Plaintiff, Defendant argues that the ALJ properly found that Plaintiff retained the ability to perform a significant number of jobs in the national economy and that the VE's opinions at the hearing constitute substantial evidence to support the ALJ's finding that Plaintiff can perform work activity because "the value of a vocational expert is that he is familiar with the specific requirements of the particular occupations at issue, including working conditions and the attributes and skills needed."  (*Id.* at 10–11.)

## V. APPLICABLE LAW AND ANALYSIS

### Issue 1

#### a.      The Parties' Specific Arguments

Plaintiff argues that the ALJ's decision contradicts itself on whether Plaintiff sought treatment during the insured period.  (Dkt. Entry No. 16 at 2.)  More specifically, Plaintiff focuses on a statement by the ALJ in his written decision, which Plaintiff characterize as a statement of fact. (*Id.*)  The ALJ wrote that, although Plaintiff suffered from the alleged mental illness, the nature of the illness and her symptoms "were not severe as she 'did not report significant depressive symptoms to her psychiatrist until January 2014.'"  (*Id.*)  Plaintiff contends that one page after that finding that there was no outcry of depressive symptoms until January 2014, the ALJ finds that in "August 2010 (well within the insured period) Ms. Ramirez treated with Dr. Esteban Gonzalez and at that time complained of suicidal thoughts, anxiety attacks and depressive symptoms such as problems with sleep, irritability, loss of appetite and concentration" and that the doctor "further found that Ms. Ramirez had difficulty coping with everyday life, and had displayed symptoms for more than ten

7

years." (*Id.* at 2.)  Likewise, in the next paragraph, the ALJ found that Plaintiff's psychiatrist, Dr. Cesar Matos, found in November 2013 that Plaintiff had severe depression in November 2013, and Plaintiff contends that this also precedes the date when the ALJ first found that Plaintiff first reported significant depressive symptoms.  (*Id.* at 3.)  Plaintiff points out that the ALJ only gave Dr. Matos' November 2013 findings "limited weight" because Dr. Matos' other treatment notes from 2012 state that Plaintiff was cooperative and did not express suicidal thoughts.  (*Id.*)  Plaintiff argues that "virtually all experts will agree that it is the nature of bi-polar disorder for a patient to vacillate between extreme highs when a patient is on top of the world and extreme lows to the depths of depression," and "[i]t is intellectually dishonest for the ALJ to find that Mrs. Ramirez's bipolar disorder is not severe as at times she displays severe depression and at other times appears pleasant." (*Id.*)  Plaintiff points to the ALJ's decision to place "great weight" on the report of Dr. Don Marler, a state agency reviewing physician.  (*Id.*)  Dr. Marler opined that Plaintiff suffered major depressive disorder and had marked limitations in the ability to understand, recall and carry out detailed instructions and moderate limitations on interacting with others, completing a normal work day, interacting with the general public, responding appropriately to changes in the work place, and accepting instructions.  (*Id.*)  Plaintiff states that Dr. Marler's report predates, by almost four years, the date on which the ALJ found that Plaintiff first reported depressive symptoms.  (*Id.*)  Based on the foregoing analysis of the evidence, Plaintiff asserts that the ALJ's findings of fact "are facially inconsistent with one another and constitute an abuse of discretion."  (*Id.* at 4.)

Defendant argues that, while  Plaintiff asserts the ALJ's decision contradicts itself with regard to whether Plaintiff sought treatment for her mental impairments during the insured period, Plaintiff's argument is mistaken.  (Dkt. Entry No. 17 at 5.)  Defendant contends that Plaintiff's

8

citations to several statements in the ALJ's written decision are taken out of context and that a closer look at Plaintiff's arguments and the ALJ's decision shows that the ALJ properly considered and discussed the medical evidence of record in assessing Plaintiff's RFC. (*Id.*) Defendant asserts that Plaintiff does not explain where her argument fits in as far as the sequential analysis. (*Id.* at 6.) For example, Plaintiff does not clarify whether her complaints concern the RFC assessment or the ALJ's findings at Steps 2 and 3. (*Id.*) Defendant asserts that it is misleading for Plaintiff to imply or argue that the ALJ determined her mental illness was not severe, as the ALJ found Plaintiff's depression and anxiety to be severe impairments at Step 2. (*Id.*) Defendant contends that, to the extent Plaintiff characterizes the ALJ's statement to mean that there was no "outcry" of depressive symptoms until January 2014, that is contrary to what the ALJ found. (*Id.*)

Defendant argues that, while the ALJ noted Plaintiff may have had mental symptoms at the hearing stage, the ALJ found that Plaintiff's symptoms and mental illnesses were not *as severe* in nature prior to the date last insured, which is not the same as concluding that they did not exist at all. (*Id.*) Defendant turns to the record and points out the following (Dkt. Entry No. 17 at 6–7), which are excerpted verbatim by the undersigned:

- The ALJ discussed Plaintiff's medical treatment and findings and noted, as an example, that in December 2010, she had no anxiety or depression, memory difficulties, or sleeping problems; on examination, she was appropriate and cooperative and her mood and affect were normal (Tr. 19; 722);

- The ALJ further noted that Plaintiff did not start treatment with a mental health professional at any time from her alleged onset date until one month prior to her date last insured, when she began treatment with Cesar Matos, M.D., P.A. in May 2011 (Tr. 19; 763–764);

9

- At that time, and throughout 2011, her main complaints were anger and anxiety symptoms, however, she was pleasant and appropriate and denied suicidal ideation (Tr. 19; 761–769); and,

- Finally, the ALJ noted that Plaintiff did not report "significant" depressive symptoms to her psychiatrist [Dr. Matos] until January 2014, and that was also the first time he noted her to be unhappy (Tr. 19; 830).

Defendant argues that Plaintiff's interpretation of the ALJ's decision and Plaintiff's reliance on record evidence described in the ALJ's decision to show that she did in fact complain of depression before January 2014 do not reflect any inconsistencies by the ALJ. (*Id.* at 7.) Defendant takes issue with Plaintiff's contention that the ALJ found that Plaintiff never complained of depression because the ALJ observed that Plaintiff did not report *severe* depressive symptoms to her psychiatrist until January 2014. (*Id.*)

Defendant continues by arguing that Plaintiff's statements about her prior treatment are misleading. Defendant argues that Plaintiff's characterization that she was "treated" by Esteban Gonzalez, M.D., in August 2010, is inaccurate because the record reflects that Dr. Gonzalez acted as a consultative examiner, not a treating physician. (*Id.*, citing Tr. 20; 668–677.) Moreover, Defendant points out that the ALJ gave Dr. Gonzalez's opinion some weight, but the ALJ also stated that Dr. Gonzalez's diagnosis of borderline IQ was made without any testing and that the doctor relied heavily on Plaintiff's subjective report of symptoms, which the ALJ called into question. (*Id.*, citing Tr. 20; 668–677). Defendant argues that the ALJ's assessment of the evidence was proper because an ALJ has the sole responsibility for determining a claimant's disability status and is free

to reject the opinion of *any* physician when the evidence supports a contrary conclusion, citing *Newton v. Apfel*, 209 F.3d at 455. (*Id.*)

Defendant also defends the ALJ's decision to give limited weight to the psychiatric review technique form filled out by Dr. Matos in November 2013, which was over two years after the date last insured, because it simply involved checking off boxes on the form, and the form does not present an inconsistency (or material one) with the ALJ's observation that Plaintiff did not report significant depressive symptoms until two months later. According to Defendant, the ALJ evaluated and weighed Dr. Matos' opinion and properly concluded that it was contrary to the medical evidence, and the ALJ noted that it was unclear if this report was referring to Plaintiff's presentation at the time of the report or during the relevant time period, which was two years earlier. (*Id.* at 8, citing Tr. 21.) Turning to the record evidence and written decision, Defendant points out that:

- that the ALJ found, "that during the relevant time period, there were limited findings regarding depressive symptoms or any limitation in Plaintiff's concentration and attention, as compared to Dr. Matos' 2013 report, which indicated that Plaintiff had marked restrictions in her activities of daily living, marked difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace." (*Id.*, citing Tr. 21; 782);

- In August 2010, Defendant points out that Plaintiff's daily living activities were not as limited because Plaintiff stated that she cooked for her family, cleaned, went to the grocery store, and tended to her personal care including bathing and feeding herself, and it was proper to consider daily activities when evaluating Plaintiff's subjective complaints (Tr. 20, 670); and,

11

- As late as April 2012, Dr. Matos' treatment records indicate that Plaintiff was cooperative and pleasant, had no suicidal ideation, and had good concentration, insight and judgment (Tr. 21; 771).

As a final matter, Defendant contends that it was not improper for the ALJ to give great weight to the opinions of Dr. Marler, a state agency psychological consultant who filled out a psychiatric review technique and mental RFC assessment in September 2010, because, while he did find that Plaintiff suffered major depressive disorder and marked limitations in the ability to understand, recall and carry out detailed instructions and moderate limitations in interacting with others, completing a normal workday, the ability to interact with the general public, the ability to respond appropriately to changes in the workplace and the ability to accept instructions, Dr. Marler also explained that the evidence as a whole showed that Plaintiff was able to function independently, interact appropriately with others, and understand, remember, and carry out simple instructions. (*Id.* at 9, citing Tr. 21; 692–694). Defendant explains that, under the law, the ALJ was not required to place weight on the opinion as a whole and is permitted to evaluate the discrete findings by the state agency consultant, if some of the findings are not supported by the record. (*Id.*) In this case, Defendant points out, the ALJ found that Dr. Marler's opinion provided support for the mental limitations in the RFC, such as Plaintiff's ability to perform simple tasks, make simple work-related decisions, and interact only occasionally with the public. (*Id.*, citing Tr. 18.) Finally, Defendant argues that, even though Dr. Marler's opinion predates the January 2014 date cited by the ALJ, it is not an inconsistency in the ALJ's decision.

In conclusion, Defendant argues that "[t]here is no merit to Plaintiff's argument that the ALJ's findings of fact were facially inconsistent and she provided no legal basis to support her bold

assertion that the ALJ's decision constitutes an 'abuse of discretion.'" (*Id.* at 10.)  Defendant contends that the "record demonstrates that the ALJ properly analyzed the medical opinions, giving good reasons for the weight given to the various medical source statements" and that there is substantial evidence to support the ALJ's RFC assessment.  (*Id.*)  Moreover, Defendant asserts that Plaintiff fails to demonstrate that the ALJ committed prejudicial error.  (*Id.*)

> **b.  Analysis**

The undersigned concludes that Plaintiff has failed to show that the ALJ erred (or erred prejudicially) or that the final decision is not supported by substantial evidence.  A fair reading of the ALJ's decision reflects that Plaintiff's argument about "inconsistent" findings by the ALJ is attenuated and, as Defendant accurately points out, involves taking statements by the ALJ out of context.  Specifically, Plaintiff complains that the ALJ found that Plaintiff did not make an "outcry" about her depressive symptoms until January 2014.  (Tr. 19.)  However, what the ALJ wrote is as follows: "In fact, she did not report *significant* depressive *symptoms* to *her psychiatrist* until January 2014, and that was also the first time he noted to appear unhappy." (Tr. 19) (emphasis added).  The ALJ cited to exhibit "27F at 6," which is a report by Dr. Cesar Matos, Plaintiff's treating psychiatrist. This document is a progress note by Dr. Matos, who lists the complaints and symptoms reported by Plaintiff during the appointment.  The document reflects a laundry list of symptoms and complaints Plaintiff reported that day, such as being upset and depressed, expressing frustration that she was denied disability benefits and the impossibility of her being able to walk to work due to her pain, and expressing that she is never happy, does not want to go out, stays in bed all day long, does not cook or clean, and does not want to take showers.  (Tr. 830.)

Comparing this 2014 progress note to other ones written by Dr. Matos, the evaluation by Dr. Gonzalez, and the record evidence in general, including Plaintiff's testimony and her complaints to other medical providers, the undersigned finds that the ALJ's reasoning that Plaintiff did not report such *significant* depressive *symptoms* to her treating psychiatrist until January 2014 and that this was the first time Dr. Matos' examination noted that she appeared to be unhappy is not an unreasonable or inaccurate description of the evidence, nor is the statement indicative of some sort of legal error by the ALJ in evaluating the evidence. (Tr. 19)  *See, e.g.*, *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (explaining that "it is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position"); *Brown*, 192 F.3d at 496 (explaining that evidentiary conflicts are for the Commissioner, not the courts, to resolve); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (explaining that an ALJ has a duty to develop the facts relative to a claim for benefits fully and fairly and, if the ALJ fails in that duty, "he does not have before him sufficient facts on which to make an informed decision").

Plaintiff points to Dr. Esteban Gonzalez's 2010 report to highlight the ALJ's alleged inconsistently because he saw her in 2010, where she complained of depressive symptoms. Plaintiff's own brief recognizes that Dr. Gonzalez's report reflects the nature of Plaintiff's subjective complaints in 2010, which included suicidal thoughts, anxiety attacks, and depressive symptoms, such as problems sleeping, irritability, loss of appetite, and lack of concentration. (Dkt. Entry No. 16 at 2.)  These symptoms are not nearly as severe as the ones Plaintiff reported to Dr. Matos in 2014.  As Defendant points out, and what Plaintiff does not mention, Dr. Gonzalez noted that Plaintiff appeared more apprehensive than depressed.  (Tr. 20.)  Dr. Gonzalez also stated that, although Plaintiff was able to perform some self-care, he felt she was limited by her low tolerance

14

to frustration and anger. (Tr. 20.) Dr. Gonzalez opined that her prognosis was guarded because she appeared to struggle with coping with everyday life, and he noted that Plaintiff reported having anxiety symptoms for about 10 years but was not receiving any psychiatric care. (Tr. 20.)   The written decision reflects that the ALJ did not find Dr. Gonzalez's consultative examination to be entirely reliable because his examination relied too heavily on Plaintiff's subjective complaints, which the ALJ said are suspect in light of the other record evidence, and his assessment that Plaintiff had a borderline IQ was not based on any intellectual testing. (Tr. 20.)   *See, e.g.*, *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) ("The administrative fact finder is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.").   Further, Dr. Gonzalez was a consultative examiner who only saw Plaintiff once.

The ALJ's observation that Plaintiff had not reported such significant symptoms until 2014 reflects that the ALJ made this statement, in part, in support of his finding that Plaintiff's subjective complaints symptoms were not as severe as she alleged, which is a critical two-step test that requires an ALJ to evaluate subjective complaints as part of the disability analysis. (Tr. 19.)   *See, e.g.*, 20 C.F.R. § 416.1529 (explaining that "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present" and that "[w]hen the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work . . . .");   *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (explaining that the law requires the ALJ to make affirmative findings regarding a claimant's

subjective complaints).  On judicial review, an ALJ's conclusion about the nature of a claimant's subjective symptoms, including pain, are entitled to considerable deference.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

In this case, the ALJ summarized Plaintiff's subjective mental health symptoms in the written decision.  Plaintiff alleged that she stopped working due to problems with her legs, shoulder, depression, anxiety, and panic attacks. (Tr. 18.)  She also stated that she was arguing a lot at work and with her supervisor. (Tr. 18.)  She felt her depression worsened when she stopped working in 2006, and she testified that her medications do not help her symptoms. (Tr. 18.)  She stated that she worries a lot, is sad, feels hopeless, and does not feel like doing anything. (Tr. 18.)  She also stated that she feels she has problems communicating with her family because she does not pay attention when they talk, and she does not make decisions anymore. (Tr. 18.)  She stated that she has occasional suicidal ideation. (Tr. 18.)  She also stated that she has anxiety symptoms everyday, and her medications only work some of the time. (Tr. 18.)  She reported that she is afraid to leave her house, and, if she does, she has panic attacks. (Tr. 18.)  She stated that she is afraid to be alone and depends on her family members to be there for her and do household chores. (Tr. 18.)  She also explained that she stays in her room most days in bed watching television or napping.

It is apparent from the written decision that the 2014 progress note was an indication that Plaintiff's subjective complaints were expanding and that she was making more specific ones after the date insured, and the ALJ reasoned that her self-reported symptoms that day were not consistent with other substantial evidence in the record and Dr. Matos' own treatment records.  The ALJ explained that Dr. Matos' psychiatric review form, which indicated that Plaintiff had marked restrictions in her activities of daily living, marked difficulties in maintaining social functioning, and

moderate difficulties in maintaining concentration, persistence or pace," was contrary to the medical evidence. (Tr. 21.) *See* 20 C.F.R. § 404.1527 (concerning the way opinion evidence is evaluated and weighed). The ALJ observed that it was unclear if Dr. Matos' psychiatric review form was referring to Plaintiff's presentation at the time of the report or during the relevant time period, which was two years earlier, but the ALJ concluded that it reflected Plaintiff's current condition. (Tr. 21.) The ALJ also found that, during the relevant time period, there were only limited findings regarding Plaintiff's depressive symptoms and Plaintiff's concentration and attention, which made Dr. Matos' 2013 opinion inconsistent with much of the record evidence.[4] (Tr. 21.) The ALJ noted that, even as late as 2012, Dr. Matos' treatment records indicated that Plaintiff was cooperative and pleasant and her concentration, insight, and judgement were good. (Tr. 21.) The written decision and record evidence support the ALJ's conclusion that the records describing her mental condition over the years do not support the severity of her subjective symptoms. The ALJ was required to consider Dr. Matos' 2014 progress note, and the written decision reflects that it was relevant to the ALJ's evaluation of Plaintiff's credibility and subjective symptoms. (*See* Tr. 18–22.)

The ALJ also explained that Plaintiff's daily living activities were not as limited as she alleged and had been inconsistent over the years because Plaintiff had stated previously that she cooked for her family, cleaned, went to the grocery store with her husband, and tended to her personal care, including bathing and feeding herself. (Tr. 20; 270.) This stands in contrast to the more extreme limitations she reported to Dr. Matos and testified about at the hearing. It was proper for the ALJ to consider Plaintiff's explanations about her daily activities when evaluating Plaintiff's

---

[4] Notably, Dr. Matos' 2013 psychiatric review form does not provide any reasoning for the limitations, and he merely checked off limitations on the form.

17

subjective complaints, whether her self-reported activities are stated at the administrative hearing or captured in treatment records or disability application paperwork, and they are also relevant to the issue of how much weight to accord to the physician opinions. (Tr. 20, 670). *See Spellman v. Shalala*, 1 F.3d 357, 364–65 (5th Cir. 1993) (holding that it was proper to reject a treating physician's opinion that the claimant could not perform sedentary work, in part, because the opinion was inconsistent with evidence of the claimant's everyday activities).

Moreover, there is no indication that the alleged error or mistake was prejudicial to Plaintiff or undermines the substantiality of the evidence supporting the final decision, and Plaintiff does not allege, let alone demonstrate, that the inconsistencies she complains about prejudiced her—especially when her argument is predicated on a selective reading of the ALJ's written decision. *See, e.g.*, *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."); *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996 ) ("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges."); *see also Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error."); *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (finding harmless error because it was inconceivable that the ALJ would have reached a different conclusion on the particular record, absent the error).

Although Plaintiff does not raise the issue of prejudice in her brief, the undersigned nevertheless reviews Plaintiff's assertions, to the extent they "might" touch on the subject of prejudice. First, Plaintiff complains that the ALJ afforded Dr. Matos' November 2013 findings

"limited weight" because Dr. Matos' treatment notes indicate that in 2012 the Plaintiff was cooperative and did not express suicidal thoughts. According to Plaintiff, "virtually all experts will agree that it is the nature of bi-polar disorder for a patient to vacillate between extreme highs when a patient is on top of the world and extreme lows to the depths of depression," and "[i]t is intellectually dishonest for the ALJ to find that Mrs. Ramirez's bipolar disorder is not severe as at times she displays severe depression and at other times appears pleasant." (Dkt. Entry No. 16 at 3.) Even if that is typical of the disorder, Plaintiff does not point to any evidence in the record showing that Plaintiff experiences such highs and lows. The undersigned observes that Plaintiff did not testify about manic episodes (*i.e.*, that she felt "on top of the world" as Plaintiff describes it in her briefing) at the hearing, nor are extreme mood swings documented in the medical records. Plaintiff testified at the hearing that she was depressed *all the time*, and Plaintiff reported this exact same subjective symptom to Dr. Matos in 2014, which he documented in the 2014 progress note that is the focal point of Plaintiff's first issue in this case.[5] On judicial review, a court does not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges. *Brock*, 84 F.3d 726 at 729.

Plaintiff takes issue with the fact that the ALJ goes on to say that he placed "great weight" on the report of Dr. Don Marler, the state agency reviewing physician, when Dr. Marler's report found that Plaintiff suffered major depressive disorder and marked limitations in the ability to understand, recall and carry out detailed instructions and moderate limitations on interacting with

---

[5] Importantly, Plaintiff does *not* argue that the ALJ failed to weigh the medical opinion evidence under the proper legal standards (or that the ALJ's findings on this issue are unsupported by substantial evidence). The undersigned has reviewed the record thoroughly and finds no prejudicial error in the ALJ's treatment and disposition of the medical opinion evidence, let alone errors that would call into question the substantiality of the evidence supporting the final decision.

others, completing a normal work day, the ability to interact with the general public, the ability to respond appropriately to changes in the work place and the ability to accept instruction. Plaintiff points out that Dr. Marler's report, which lists all of these problems, predates by almost four years the date when the ALJ found that Plaintiff first reported depressive symptoms. However, the undersigned finds that this is not persuasive evidence of a prejudicial inconsistency regarding the ALJ's statement about when Plaintiff started making significant outcries about her symptoms showing that the outcome would any different were it remanded, nor does Plaintiff even frame it that way. *See Brock*, 84 F.3d at 729 ("We do not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges."). Plaintiff simply argues that this evidence shows that the ALJ's findings are "inconsistent" about whether Plaintiff reported symptoms of her depression before 2014, but, as already explained, Dr. Matos' other progress notes and Dr. Gonzales's report depict fewer symptoms, as opposed to the debilitating and paralyzing pain and depression that, in her own words, rendered her unable to work and caused her to spend most of her time in bed and that her symptoms were alleviated only minimally by her medications. Moreover, the psychiatric evidence, some of which Plaintiff relies on in support of her argument, reflects a notable lack of treatment by Plaintiff for her allegedly debilitating mental health conditions. The ALJ observed that Plaintiff did not start active treatment with a mental health professional at any time from her alleged onset date until one month prior to her date last insured, at which time she began treatment with Dr. Matos in May 2011. (Tr. 19.) The ALJ wrote that, at that time and through 2011, Plaintiff's main complaints to Dr. Matos were anger and anxiety symptoms, but, at the same time, Dr. Matos noted she was pleasant and appropriate and denied suicidal ideation. (Tr. 19; 761–769.) The undersigned finds that the

20

ALJ's discussion of Dr. Marler's assessment, Dr. Gonzalez's consultative report, and Dr. Matos' psychiatric review form and treatment notes are a reflection of the ALJ's reasoning as he weighed the medical opinions and evidence in the record, including Plaintiff's subjective symptoms and statements about her daily living activities, and do not constitute inconsistent findings of fact that rise to the level of prejudice error. *See* 20 C.F.R. § 404.1527 (listing daily activities as one of the considerations weighed when weighing opinion evidence by physicians)*; Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991) ("It was . . . within the discretion of the ALJ to discount [the claimant's] complaints of pain based upon the medical reports combined with her daily activities and her decision to forgo certain medication.").

The ALJ's statement about and disposition of Dr. Matos' 2014 progress note does not constitute legal error, and it is very important to emphasize that Plaintiff does not argue that the ALJ committed "legal error," only that the ALJ "abused his discretion," which, in technical terms under § 405(g)and case law, is not an independent ground for remand, nor does Plaintiff cite to any applicable law that permits a federal court to remand for an ALJ's "abuse of discretion" concerning one treatment note or one statement by an ALJ in his written decision. *Brown*, 192 F.3d at 496 (explaining that under 42 U.S.C. § 405(g), judicial review is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act).

To the extent Plaintiff argues that the ALJ's "findings" are inconsistent with each other, the record does not support that conclusion. The evidence and the ALJ's reasoning set forth above reflect that there is substantial evidence to support the ALJ's conclusions at Step 4, which include

his adverse findings about Plaintiff's subjective symptoms, the disposition of the physician opinions, and the RFC determination—which, as Defendant correctly points out, are not expressly challenged by Plaintiff. Again, her only argument is that the ALJ's "findings" are "inconsistent" and, as such, amount to an "abuse of discretion" by the ALJ. However, Plaintiff's first issue relies on a selective reading of and selective excerpts from the ALJ's decision. The ALJ's written decision provides a sufficiently clear basis, with substantial evidence in support, for this reviewing Court to understand why the ALJ did not find her subjective symptoms to be as "significant" prior to Dr. Matos' 2014 progress note. The undersigned finds that, after a thorough review of the record and the parties' arguments, Plaintiff's first issue lacks merit.

### Issue 2

#### a.      The Parties' Specific Arguments

For her second issue, Plaintiff argues that the jobs identified by the VE at the hearing, which the ALJ relied on at Step 5 and led to the ALJ's conclusion that Plaintiff is not disabled, are "inconsistent" with the work Plaintiff can do. (Dkt. Entry No. 16 at 4.)  More specifically, Plaintiff argues that, once one applies the ALJ's findings of fact about Plaintiff's mental and physical condition, it is apparent that Plaintiff cannot perform the three possible jobs cited as proof that she is not disabled.  (*Id.* at 6.)

In making this argument, Plaintiff compares the identified RFC limitations to the description of the three positions in the Dictionary of Titles ("DOT"). According to Plaintiff, multiple reports and opinions are virtually unanimous that the Plaintiff has "marked" limitations in interacting with the public, following directions, being able to cope with changing situations, and finding that Plaintiff could no longer physically perform her past occupation of a cleaner due to range of motion

22

limitations. However, the ALJ found that Ms. Ramirez was not disabled because there were at least

three jobs that she could perform, based on the VE's testimony. Plaintiff argues that it is clear that

these positions do not fit with the findings of fact as to Plaintiff's capabilities.

The first occupation identified by the VE is "theater usher." Relying on Plaintiff's brief, the

Dictionary of Occupational Titles (DOT #244.677-014) defines theater usher in the following way:

> "Assist patrons at entertainment events, such as sporting events, motion pictures, or
> theater performances. Collect admission tickets and passes from patrons. May assist
> in finding seats, searching for lost articles, and locating such facilities as rest rooms
> and telephones."

Plaintiff argues that, even though the ALJ found that Plaintiff is unable to interact with the

public, follow instructions, or cope with changing circumstances, the ALJ recommended that

Plaintiff be employed in a "100% customer service job that focuses on interacting with the public,

giving directions and dealing with constantly varied situations," and "[o]ne cannot imagine a more

disastrous occupational track for someone with the mental issues the ALJ, and all of the reviewing

physicians, found were present in Mrs. Ramirez." (*Id.* at 5.)

As for the scaling machine worker and bakery worker, Plaintiff argues that these jobs exceed

the limitations identified in the RFC. Plaintiff provides the DOT describes a bakery worker (DOT

#524.687-022) as follows:

> Performs any combination of following tasks in preparation of cakes along conveyor
> line: Reads production schedule or receives instructions regarding bakery products
> that require filling and icing. Inspects cakes moving along conveyor to detect defects
> and removes defective cakes from conveyor to reject bins. Positions cakes on
> conveyor for application of filling or icing by machine, observes filling or icing
> application to ensure uniform coverage, and places additional cake layers on coated
> layers, depending on number of cake layers in product. Observes cakes moving under
> automatic topping shaker and cake cutting machine to ensure uniform topping
> application and cutting. Smooths iced edges of cake, using spatula, and moves
> decorating tool over top of designated cakes to apply specified appearance. Notifies
> supervisor of malfunctions.

23

Plaintiff argues that, although ALJ found that Ms. Ramirez cannot perform her previous work as a casino cleaner due to limited cervical and reaching range of motion, it is inconsistent to conclude that Plaintiff could stand in an assembly "line using a spatula for eight hours a day which presumably would use the same range of motion and body parts as the dusting, sweeping and vacuuming that the ALJ found Mrs. Ramirez was incapable of." (*Id.*) At the same time, Plaintiff states that it "is also notable that the ALJ and physicians found that [Plaintiff] has a difficult time remembering, understanding and carrying out instructions," which "would presumably complicate the portions of the job description that are essentially quality control operations in inspecting the product as it moves down the assembly line." (*Id.* at 5–6.)

As for the DOT position of a scaling machine operator (DOT# 521.685-386), it is defined as follows:

> Tends machine that removes scales from fish: Turns valve to start spray of water over spiked rollers of scaling machine. Pushes buttons to start and stop conveyor that feeds fish from holding tank into tray at feeding end of machine and to start scaling machine. Feeds fish onto conveyor that moves fish through spiked rollers that remove scales from sides of fish and that dumps fish into containers.

Plaintiff contends that, according to the DOT definition, the scaling machine operator "also appears to be a repetitive assembly line job similar to the bakery worker," and "it would present the same limitations and drawbacks" to Plaintiff. (*Id.* at 6.)

**b.    Analysis**

An "ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). The Fifth Circuit has noted that all kinds of conflicts are possible between the DOT and a VE's testimony, and "the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such

situation." *Id.* at 146. In light of this, "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Id.* at 146–47.

Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *2, discusses an ALJ's responsibilities regarding VE testimony and potential conflicts with the DOT, which are tied to the ALJ's general duty to develop the record. The ruling explains that "[n]either the DOT nor the [vocational expert] evidence automatically 'trumps' when there is a conflict." *Id.* If there is a conflict, implicit or express, SSR-04p states that the "adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information." *Id.* SSR 00-4p recognizes that the "DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* at *2–3. As such, an ALJ may rely on the testimony of the vocational expert where the vocational expert is able to provide more specific information about jobs or occupations than the DOT. *Id.* at *3.

As explained in more detail in SSR 00-4p:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

*Id.*, at *2.

25

Similarly, the Fifth Circuit has stated " that the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey*, 230 F.3d at 145. At Step 5, an ALJ may properly rely upon the testimony and conclusions of a VE because the "value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* Indeed, like Plaintiff, if "the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner *must rely* on a vocational expert to establish that such jobs exist in the economy." *Newton*, 209 F.3d at 458 (citation omitted). A hypothetical question posed by an ALJ to a VE must reasonably incorporate all the claimant's disabilities recognized by the ALJ and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). The Fifth Circuit has explained that, if "the claimant offers no evidence contrary to the VE's testimony, the claimant fails to meet his burden of proof under the fifth step of the disability analysis." *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005) (citations omitted).

The undersigned finds that Plaintiff's arguments lack merit. The record reflects, and Plaintiff does not contest otherwise, that the ALJ included all of the limitations associated with Plaintiff's RFC in the adopted hypothetical to the VE. Also, Plaintiff does not contend there is a problem with the ALJ's RFC determination. The undersigned points out that, contrary to Plaintiff's argument, the ALJ did not conclude that Plaintiff can have no contact with the public whatsoever; rather, the ALJ determined that Plaintiff can only occasionally interact with the public. (Tr. 17–18.)

A review of the hearing transcript reflects that the ALJ and VE discussed Plaintiff's prior work. (Tr. 134.) The VE described Plaintiff's prior work as a casino cleaner and stated that it is

26

classified in the DOT as light work, with a SVP (Specific Vocational Preparation) of 2.[6]  (*Id.*)  In determining Plaintiff's RFC, the ALJ determined that Plaintiff could only occasionally reach overhead and all other directions with both upper extremities.  The VE testified that, in light of the limitations incorporated into Plaintiff's RFC, she is unable to perform her previous work as a casino cleaner because it involved too much reaching and handling.  (Tr. 135.)

The VE testified that a scaling machine operator is consistent with the RFC because the position is unskilled light work, with a SVP of 2, and only calls for occasional reaching and handling, and a bakery worker on a conveyor line is classified as unskilled light work, with a SVP of 2.  (Tr. 135.)  The VE stated that these jobs involve limited public contact.  (Tr. 136.)  As for the theater usher, the VE explained, in reduced numbers, there is not a "great deal of interaction with patrons."  (Tr. 136.)  The VE also explained that the theater usher position involves only occasional reaching and handling and is classified at the light, unskilled level, with a SVP of 2.  (Tr. 136.)

The ALJ asked the VE whether the VE's testimony was consistent with the DOT, and the VE stated "yes," except for the reduction for the theater usher jobs, which was made based on experience.  (Tr. 136.)  *See Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (noting with approval that "the vocational expert relied on his expertise to arrive at the conclusions that he gave to the ALJ, and he explained how he arrived at his conclusions").  Pursuant to SSR 00-4p, the ALJ fulfilled his duties to ask the VE if there were any conflicts with the DOT, and the ALJ explained this conflict in his written decision and resolved it by relying on the VE's reduction of the number of theater usher jobs.  As a final matter, and to the extent relevant, the record reflects that Plaintiff

---

[6] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, *unskilled work corresponds to an SVP of 1-2*."  Social Security Ruling R 00-4p (emphasis added).

did not challenge the VE's testimony at the hearing.  When Plaintiff's disability-specialist (non-attorney) representative was asked whether he had any questions for the VE, he stated "no."  (Tr. 127.)  *See Carey*, 230 F.3d at 147 (explaining that it is relevant on judicial review, in the context of Step 5 and in light of the record as a whole, to consider whether the VE's testimony went unchallenged when determining whether substantial evidence supports an ALJ's determination that a claimant can perform other available work); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (explaining that, once the Commissioner finds that jobs in the national economy are available to a claimant, the burden of proof shifts back to the claimant to rebut this finding).

On judicial review, Plaintiff's argument that the RFC and jobs identified by the VE are "inconsistent" is based on an unpersuasive, selective reading of the VE's testimony and the DOT descriptions of the positions, as well as speculative assumptions or inferences in her briefing about the requirements of the positions.  Moreover, Plaintiff has failed to identify any express or implied conflicts or inconsistencies between her RFC, the jobs identified by the VE, or the definitions of the DOT.

As for the theater usher position, Plaintiff's argument is based on appearances—namely, what she thinks a theater usher might do.  She asserts that it is a "100% customer service job."  As Defendant correctly points out, however, Plaintiff does not mention that the VE reduced the number of those jobs by 50%, precisely because of the public-interaction limitation incorporated into Plaintiff's RFC.  For the assembly line jobs, such as the bakery worker and scaling machine operator, Plaintiff's argument is based on an unsupported assertion that these position "presumably" involve the same range of motion as the requirements of her past relevant work, which the VE and ALJ concluded she could no longer perform.  Overall, Plaintiff's arguments are too speculative to merit

28

a remand. She does not rely on any authority in making her arguments, other than provide the bare minimum DOT definitions. Plaintiff also argues that, in light of the fact that the record shows that Plaintiff has a difficult time remembering, understanding and carrying out instructions, the scaling machine and bakery jobs "would presumably complicate the portions of the job description that are essentially quality control operations in inspecting the product as it moves down the assembly line." What Plaintiff does not mention is that the assembly line jobs involve only the ability to "carry out simple one- or two-step instructions." *See* DOT No. 521.685-386 and No. 524.687-022.

The undersigned points out that the *Carey* case, cited above, involved a similar argument that Plaintiff is asserting here: namely, that it simply defies common sense to believe that a claimant with particular limitations can perform certain jobs identified by a VE, in light of the DOT definitions. In *Carey*, 230 F.3d at 146, the Fifth Circuit rejected that type of argument, as it is based solely on purported conflicts and attenuated inferences. The court stated that, [w]hat is involved here is merely an alleged conflict between the vocational expert's specific testimony that Carey could perform the jobs of cashier and ticket seller with one hand, and a DOT description stating that the person in those jobs will be required to have some ability to finger and handle things." *Carey*, 230 F.3d at 146. The Court noted that the "conflict identified by Carey does not even become apparent until the further inference is made that the jobs require manual dexterity with, not one, but two hands." *Id.*

In light of the foregoing, the undersigned finds no error, let alone a prejudicial error. *See, e.g., Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012) (explaining that a mere allegation that additional beneficial evidence might have been gathered had an error not occurred is insufficient to meet the burden of showing that an error by the ALJ was prejudicial). It was not improper for the

29

ALJ to rely on the VE's testimony, which went unchallenged by Plaintiff, and the ALJ followed the proper legal standards in doing so. Further, the undersigned concludes that the VE's testimony constitutes substantial evidence to support the ALJ's decision at Step 5. The record as a whole, which reflects a substantial amount of evidence indicating that Plaintiff is "not disabled" within the meaning of the Act and Plaintiff's inability to point to anything tangible or meaningful to illustrate harm on judicial review (except to speculate about what skills the jobs identified by the VE might or "presumably" entail) or to show that the outcome might be different on remand support the conclusion that Plaintiff was not sufficiently prejudiced or harmed by the ALJ's alleged error(s) at Step 5.

## VI. CONCLUSION

### *Recommended Disposition*

Based on a review of the pleadings and record, the undersigned recommends that Plaintiff's request for relief be **DENIED**, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy thereof. The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 26th day of October 2017.

Dorina Ramos
UNITED STATES MAGISTRATE JUDGE

31